# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### FEBRUARY 15, 2005 Session

## FLAUTT AND MANN, a Partnership v. THE COUNCIL OF THE CITY OF MEMPHIS, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. 75359-4 T.D.     Rita L. Stotts, Judge**

---

**No. W2004-01188-COA-R3-CV - Filed April 22, 2005**

---

This appeal involves protracted litigation concerning the zoning of a parcel of land located in Memphis, Tennessee. After a bridge, which provided the only access to the property, washed away, the landowner planned to install and maintain billboards on the subject parcel by helicopter. The landowner initially applied to the Memphis City Council to have the subject parcel re-zoned from agricultural uses to commercial uses. The Memphis City Council rejected the landowner's application. The landowner filed a petition for review by common law writ of certiorari and an action for declaratory judgment in the circuit court. The circuit court entered an order reversing the decision of the Memphis City Council and remanding the case to the Council for a new hearing. Upon remand, the Memphis City Council once again rejected the landowner's application. The landowner filed a petition for contempt in the circuit court alleging the Council violated the court's order on remand. The trial court found that, while the Memphis City Council violated the court's order in every respect, it was not in willful contempt of the court's order because it relied on the erroneous advice of its lawyer in interpreting the order. The trial court then proceeded to remand the case to the Memphis City Council once more for a new hearing. The City filed an appeal. We reverse the decision of the trial court and remand the case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. Frank Crawford, P.J., W.S., and DAVID R. FARMER, J., joined.

Robert L. J. Spence, Jr., Memphis, TN, for Appellants

William H. Fisher, III, Valerie F. Fisher, Memphis, TN, for Appellee

# OPINION

## I.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1979, Flautt & Mann, a partnership, purchased a parcel of real property currently located at the intersection of Interstate 240 and Mt. Moriah Road in Memphis, Tennessee. The subject property, approximately 13.55 acres in size, is presently bounded by Interstate 240 to the north, "old" Mt. Moriah Road to the west, Nonconnah Creek to the south, and property owned by Shelby County to the east. According to Flautt & Mann, they originally intended to use the subject property to develop commercial office buildings. When Flautt & Mann purchased the property, vehicles could access the parcel by using a bridge from "old" Mt. Moriah Road, a public road, across Nonconnah Creek.

At some point, the State of Tennessee ("State") constructed a portion of Interstate 240 to the north of the subject parcel, and the project included the construction of an interchange at Mt. Moriah Road. During the course of constructing the new interchange, the State created a new bridge across Nonconnah Creek which, in turn, limited access to "old" Mt. Moriah Road. The State did, however, leave the "old" Mt. Moriah Road bridge intact when it completed construction of the interchange. Thereafter, maintenance of the "old" Mt. Moriah Road bridge ceased. In approximately 1984, the "old" Mt. Moriah Road bridge leading to the subject parcel collapsed. Following the bridge's collapse, no effort was undertaken to rebuild the bridge, and the subject property remained without vehicle access.[1] In approximately 1990, the State filed a condemnation action against Flautt & Mann in the Circuit Court of Shelby County to acquire a portion of the subject property to widen Interstate 240. In turn, Flautt & Mann filed a claim against the City of Memphis ("City") seeking a mandatory injunction ordering the City to restore access to the subject property.

Without vehicle access, the only way to reach the subject property is by helicopter. Flautt & Mann determined, and the City agreed, that the only economically viable use of the property was as a site for the construction and maintenance of billboards, which could be accomplished by helicopter. The City, however, has zoned the subject property for agricultural uses only. On May 10, 1994, Flautt & Mann filed an application with the Memphis and Shelby County Office of Planning and Development ("OPD") seeking to have the property re-zoned for either commercial

---

[1] It is estimated that the cost of restoring access to the property by building a new bridge across Nonconnah Creek would be approximately $2,000,000.00.

or industrial uses.[2]  After reviewing the application, OPD recommended that the application be rejected for the following reasons:

1. The location of the site makes rezoning to the Highway Commercial District inappropriate.  The property has no available vehicular access to support land uses permitted by the C-H District including billboards.  No access is allowed for maintenance of signs from the interstate by the TN Department of Transportation.
2. Rezoning to the C-H District cannot be justified solely for the purpose of allowing billboards.
3. Billboards on the subject property may be visible over sound barriers erected behind single family residential properties north of the expressway creating an adverse visual effect on those residences.

In fact, OPD's policy is to reject applications for re-zoning to commercial or industrial designations when the sole purpose is to construct billboards.  The Memphis and Shelby County Land Use

---

[2] It was necessary for Flautt & Mann to file an application for re-zoning due to state law, which provides:

**Restrictions on outdoor advertising on interstate and primary highways. —**

No outdoor advertising shall be erected or maintained within six hundred sixty feet (660') of the nearest edge of the right-of-way and visible from the main traveled way of the interstate or primary highway systems in this state except the following:

(1) Directional or other official signs and notices including, but not limited to, signs and notices pertaining to natural wonders, scenic and historical attractions which are authorized or required by law;
(2) Signs, displays and devices advertising the sale or lease of property on which they are located;
(3) Signs, displays and devices advertising activities conducted on the property on which they are located;
(4) Signs, displays and devices located in areas which are zoned industrial or commercial under authority of law and whose size, lighting and spacing are consistent with customary use as determined by agreement between the state of Tennessee and the secretary of transportation of the United States; and
(5) Signs, displays and devices located in unzoned commercial or industrial areas as may be determined by agreement between the state of Tennessee and the secretary of transportation of the United States and subject to regulations promulgated by the commissioner.

Tenn. Code Ann. § 54-21-103 (2003).  All of the subject property is within 660 feet of Interstate 240, therefore, Flautt & Mann sought to qualify for the exception in section 54-21-103(4) of the Tennessee Code by having the property re-zoned.

Control Board subsequently rejected the application based upon the recommendation of OPD. Flautt & Mann appealed the rejection of its application to the Memphis City Council.

On November 21, 1995, Flautt & Mann's application came before the Memphis City Council. At the hearing, Mary Baker ("Ms. Baker"), Deputy Director of OPD, advised the Memphis City Council that OPD recommended rejecting the application because the property did not have adequate vehicle access. In addition, a neighborhood association attended the meeting and offered testimony in opposition to Flautt & Mann's application. The Memphis City Council voted five (5) to four (4) in favor of granting Flautt & Mann's application, but the application failed because zoning changes require the approval of a majority of the fifteen member Memphis City Council.

On January 17, 1996, Flautt & Mann filed a "Petition for Certiorari or, in the Alternative, for Declaratory Judgment" in the Circuit Court of Shelby County. The petition alleged two counts: (1) that, pursuant to a common law writ of certiorari codified at section 27-8-101 of the Tennessee Code, the circuit court should find that the Memphis City Council exceeded its jurisdiction or acted illegally and arbitrarily in denying Flautt & Mann's application for re-zoning; and (2) that, since the actions of the Memphis City Council amounted to a taking without just compensation, Flautt & Mann is entitled to a declaratory judgment to that effect. Flautt & Mann also requested a jury to try the issues when joined. The circuit court entered a Writ of Certiorari on January 17, 1996, requesting that the record of the proceedings before the Memphis City Council be certified and sent to the circuit court for review. On March 20, 1996, the City filed a motion seeking to dismiss the declaratory judgment count in the petition. The City alleged that the declaratory judgment count encompassed the same relief sought by Flautt & Mann in its third-party complaint against the City in the condemnation action filed by the State. On August 27, 2002, the circuit court entered a consent order transferring the case, which had previously been set for trial by a jury, to the court's non-jury calendar.

On March 18, 2003, following a hearing on the matter,[3] the trial judge addressed the parties in open court, stating:

> I reviewed the submissions on this matter and it appears to me that this case should be remanded to the City Council because I do think their actions were arbitrary in light of evidence concerning the surrounding properties. It may not have been intentional on their part, particularly as I said I observed the majority vote was in your client's favor, but the ultimate result was still the same. So we'll see what happens upon remand. If y'all [sic] will draft the appropriate order.

That same day, the circuit court entered an order containing the following language:

---

[3] On March 10, 2003, the circuit court heard testimony from Judson R. TePaske, a planning consultant, and entertained ten exhibits introduced during the hearing. On March 11, 2003, the circuit court heard argument from counsel for the parties.

-4-

This Cause came to be heard this day . . . on the petition of . . . Flautt & Mann, for review by common law certioriari, statutory certiorari, and/or declaratory judgment of the action of the Memphis City Council in denying Plaintiff's request for rezoning of property owned by it . . . on the hearing on Plaintiff's petition in open Court; on the responses of the Defendants to the Plaintiff's Request for Admissions; on the testimony of Judson TePaske; and, on the entire record in this Cause, from all of which the Court makes the following findings of fact and conclusions of law:

That the denial of the Plaintiff's request for a change of zoning from AG to CH is invalid and should be reversed for the reason that it violates Section 138 of the Charter of the City of Memphis[4] in that the Council failed to consider the complete change in the character of the neighborhood in which the subject property is located from AG to CH, and failed to take into account the fact that the subject [sic] is not suitable for any economically viable use with its existing AG zoning and is suitable for an economically viable use only if zoned CH.

The denial of the zoning requested is invalid and should be reversed for the additional reason that it denies to the Plaintiff the same CH zoning given almost every other parcel of land in its relevant neighborhood, and also because it deprives the Plaintiff of the same commercial and industrial zoning necessary for the construction of "signs" within 660 feet of an interstate highway, given many other parcels of property located throughout the City, which are similarly situated, i.e., which have no vehicular access and on which "signs" are the only existing structures.

The denial of the zoning requested is invalid and should be reversed for the further reason that it deprives the Plaintiff of its reasonable investment-backed expectations for its property (i.e., use as a commercial site) and deprives the Plaintiff of the only

---

[4] Section 138 of the Charter of the City of Memphis provides:

For each of such districts, regulations may be imposed by ordinance, designating the uses for which buildings may or may not be erected or altered, and designating the trades and industries that shall be excluded or subjected to special regulations. Such regulations shall be in accordance with a plan designated to lessen congestion on the public streets, to promote the public health, safety, convenience general welfare, and *shall be made with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values, and the direction of building development.*

(emphasis added).

economically viable use of its property, which is conceded to be use as a "sign" site.

Since the Council made no findings of fact, it is not possible to know the basis for its decision in denying the Plaintiff's request for change of zoning. However, there were only six reasons for rejection of Plaintiff's request advanced by OPD and protestors who appeared at the Council hearing, and it may therefore be assumed that the denial of the zoning requested by Plaintiff was based on one or more of these reasons, which are as follows:

1. That the CH zoning requested would constitute "spot zoning";

2. That the subject property lacked vehicular access;

3. That the construction of "signs" on the subject property are aesthetically displeasing;

4. That CH zoning cannot be justified solely for the construction of "signs";

5. That "signs" on the subject property may be seen from the residential neighborhood to the north of the subject property; and,

6. That the construction of "signs" on the subject property would require cutting trees, which would be detrimental to the environment.

If the Council's denial of the Plaintiff's request for CH zoning was based on any of the grounds enumerated above, the denial is invalid and should be reversed. . . .

. . . .

On the basis of the foregoing, IT IS, THEREFORE, ORDERED, ADJUDGED, and DECREED that the decision of the Council denying the Plaintiff's requested change of zoning for the subject property from AG to CH be, and the same is hereby, reversed, and the Cause is remanded to the City Council with instructions to the Council to grant the Plaintiff's request for rezoning of the subject property from AG to CH.

Counsel for Flautt & Mann drafted the order and inserted the instruction to the Memphis City Council to grant the requested zoning on remand.

Additionally, the original order contained the following findings: the zoning requested by Flautt & Mann would not constitute spot zoning; it was unreasonable for the Memphis City Council to require vehicle access because the zoning ordinances contain no such requirement, and other property throughout the City has been granted commercial zoning despite lack of vehicle access; zoning based solely on aesthetic reasons is invalid in Tennessee; the zoning ordinances permit the construction of signs in commercial zones, therefore, a policy absolutely prohibiting re-zoning for

-6-

the purpose of constructing signs is contrary to law; pictures presented at the hearing conclusively proved that signs, if constructed on the subject property, could not be seen from the residential neighborhood to the north due the sound barrier wall on the north side of Interstate 240; and, since the property is wooded, any use of the property would involve cutting tress, therefore, a denial of zoning for this reason is invalid.

On April 15, 2003, the City filed a motion, pursuant to Rule 52.02 of the Tennessee Rules of Civil Procedure, asking the circuit court to clarify whether it intended to order the Memphis City Council to grant the requested zoning on remand. Flautt & Mann subsequently filed its own motion to alter and amend the judgment, requesting that the court enter a revised order requiring the City to pay $439.15 per day from November 21, 1995, until the Memphis City Council granted Flautt & Mann the requested zoning as damages for the wrongful denial of zoning. The parties argued the motions before the circuit court over a period of two non-consecutive days.

At one of the hearings held on May 28, 2003, the trial judge made the following statements to the parties:

> I don't know what the result is going to be, but the point is this, after hearing the proof it was The Court's intention that the matter be remanded to the City Council and as I indicated I don't think I have a vote on the City Council. . . . My intent was to remand the case with the instruction to the City Council that the import of its ruling was that its decision was arbitrary and capricious.
> Now, in terms of how they fix that, I don't think I have the choice in terms of telling them how they fix what The Court has already found to have been an arbitrary and capricious decision. . . . Certainly I'm not going to change my ruling. But I'm just trying to make sure that everbody understands what my ruling was or what my intent was when I made my decision. That's to remand the case to the Council. But I don't think I can tell them you must make X decision. I think it's kind of implicit, but I don't think that my order should tell them you've got to vote a particular way because then I think I would be infringing on their authority, but the import is the same. Does that make sense?
> . . . .
> It seems to me that the order needs to be then amended consistent with Nance and Hoover, and in the ordering part it seems to me that there needs to be some language that tracks the language in Hoover in terms of telling the Council, number one, there's not to be any new evidence adduced or whatever, but they're to make their decision consistent with my order, and I mean it doesn't take a rocket scientist I don't guess to figure out if I've already said that the previous ruling

was arbitrary and capricious, that I don't guess it's going to take a rocket scientist to figure that out.

On June 16, 2003, the circuit court granted the City's motion and denied the motion of Flautt & Mann. That same day, the circuit entered an amended order containing identical findings to the previous order, but the court removed the mandatory language and inserted the following language in its place:

> On the basis of the foregoing, IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED that the decision of the Council denying the Plaintiff's requested change of zoning for the subject property is remanded to the City Council, which in accordance with the holding in Hoover vs. Metropolitan Board of Zoning, 955 S.W.2d 52 (Tenn. App. 1997) is hereby instructed as follows: (1) the Council is to conduct a new hearing on Plaintiff's zoning application based solely on the record in this Court, consisting of the record of the initial hearing before the Council on November 21, 1995, and the additional evidence presented at the hearing of this cause; (2) that at the new hearing, it shall not consider additional evidence of any kind offered by anyone; (3) that following the new hearing, the Council shall take action which is consistent with the findings and conclusions contained in this order; and, (4) that the matter be expedited by the Council to the maximum extent possible. In making this order, the Court's intent is to remand this case to the City Council. The Court is not directing the Council to make any specific decision or to vote in any particular way, but is only directing that whatever action is taken be consistent with the findings and conclusions contained therein.[5]

Neither party appealed this final order. Subsequent to the trial court's amended order, Allan Wade ("Mr. Wade"), counsel for the Memphis City Council, and William Fisher ("Mr. Fisher"), counsel for Flautt & Mann, began communicating through numerous letters attempting to identify the action required by the Memphis City Council on remand. On June 16, 2003, the same day the trial court entered the amended order, Mr. Fisher wrote a letter to Mr. Wade stating that Flautt & Mann took the position that, while the amended order stated that the trial court was not ordering the Memphis City Council to take any particular action on remand, the trial judge implicitly intended for the council to approve the requested zoning. On June 20, 2003, Mr. Wade drafted a letter to Mr. Fisher in which he stated:

---

[5] By letter dated June 12, 2003, a few days prior to the entry of the amended order, Mr. Fisher wrote to one of the City's attorneys stating that he agreed to the new language in the amended order based on the City's representations that the City would not appeal or attempt to sabotage his client's zoning application on remand.

> Judge Stotts' Order notwithstanding, the Council has the legislative discretion, exercisable for a rational basis, to approve or to deny your client's application. This has always been my advice to the Council and will continue to be my advice to the Council. I have an ethical duty, as do you, to follow the mandates of the Constitution and the Tennessee Supreme Court. I believe Judge Stotts has a similar judicial duty.

This verbal jousting continued as Flautt & Mann's zoning application made its way before the Memphis City Council on remand.

On remand, the Memphis Planning and Zoning Committee initially addressed Flautt & Mann's application on September 16, 2003. Mr. Wade appeared before the committee and presented a verbal summary of the case to the committee members. While he instructed the committee that the trial court ordered that reconsideration be limited to the record before the court, Mr. Wade made the following statement:

> I am going to prepare . . . I'm going to ask them to go back out and look at the property and come back to you with an updated report. I know this is something that is technically — it may be arguable [sic] outside the Court's Orders, but I believe that this body has an obligation to investigate the public safety, health, and welfare.
> I don't care what a Court tells you to do. And I'll go back and argue that one, but I think we need to make sure there are no other issues that we are going to consider.

When the council recognized the presence of Mr. Fisher at the hearing, Mr. Wade instructed the committee that, in order to strictly comply with the trial court's order, they should not hear from Mr. Fisher. The committee voted to accept Mr. Wade's recommendation for an updated report on the subject property and set the matter for another hearing on October 21, 2003.

Ms. Baker sent a memorandum dated October 16, 2003, to Mr. Wade providing, in relevant part, as follows:

> This memo is meant to provide an updated analysis from the Office of Planning and Development (OPD) regarding an application which proposed to rezone a 13.55 acre site adjacent to Interstate 240 at Mt. Moriah Road. . . . Nine years have passed since OPD issued a report on the application on July 14, 1994.
>
> The following updated comments are based on the agency's current view of the file, updated zoning maps and a recent field visit. . . .

The memorandum went on to state that the property remains inaccessible by vehicle; that Nonconnah Parkway, not shown on the map in the 1994 report, has been constructed; and contained current maps showing the subject property and surrounding zoning pattern, stating that the dominant pattern is residential and agricultural.

On October 21, 2003, the Memphis City Council first addressed Flautt & Mann's application for re-zoning on remand. Mr. Wade once again undertook to address the Council members and summarize the litigation. At this meeting of the Memphis City Council, only seven of the members currently serving were serving at the time of the original application filed by Flautt & Mann. Due to the makeup of the existing Council, Mr. Wade stated that he asked OPD to revisit the site to "make sure there were no safety issues or any other issues relevant." Mr. Wade provided the Council members with a copy of the updated OPD report. Additionally, Mr. Wade emphasized to the Council members the discretionary nature of the language inserted into the trial court's amended order. Referencing section 138 of the Charter of the City of Memphis, Mr. Wade urged the Council to consider this provision and made the following statement:

> So — and safety is an issue that this council cannot delegate, whether a court tells you not to do it or not. It's something that you have to do irrespective of whether someone tells you not to do it or not.

Mr. Fisher also addressed the Council and stated his view as to what was required of the Council on remand. After many of the Council members expressed their confusion about what was expected on remand, the Memphis City Council voted to send the application back to the zoning committee for consideration and a hearing on November 18, 2003.

At the hearing before the zoning committee on November 18, 2003, Mr. Wade referenced a letter he wrote to the Memphis City Council on November 4, 2003, summarizing the trial court's order and recommending that the Council members not consider any additional evidence or arguments. In the letter, Mr. Wade stated that, in his opinion, the trial court was not ordering the Council members to take any particular action, but they should only reconsider the zoning request consistent with the trial court's order. He reiterated that the Memphis City Council should comply with and consider section 138 of the Charter of the City of Memphis, only consider the record before the trial court, and they should not entertain arguments from the applicant or opponents to the zoning request.

The zoning committee refused to hear from Mr. Fisher and refused to consider a memorandum he prepared and sent to the Council members. The committee members once again expressed their confusion as to what was required by the Memphis City Council on remand. The zoning committee voted to send the matter back to the Memphis City Council without a recommendation, and the matter proceeded to the Memphis City Council that same day. Ms. Baker of OPD addressed the Council members to give them a "brief overview" of the case. Ms. Baker referred to the pattern of zoning in the area, and she reiterated the reasons OPD recommended rejecting the application in 1994. The Council members then proceeded to discuss Flautt & Mann's

application for re-zoning.  During their discussions, the Council members were conflicted about exactly what action the trial court ordered them to take on remand.  Ultimately, at the November 18, 2003, hearing, the Memphis City Council voted to reject Flautt & Mann's application for re-zoning.

On January 20, 2004, Flautt & Mann filed a petition for contempt in the circuit court. Flautt & Mann requested that the trial court find the Memphis City Council in contempt of the court's amended order issued on June 16, 2003.  Additionally, Flautt & Mann sought compensatory damages in the amount of $1,500.00 per day from the date of the amended order until such time as the Memphis City Council granted the requested zoning and their attorney's fees.  Alternatively, Flautt & Mann noted that, in the amended order, the trial court found that the denial of the requested zoning amounted to a confiscatory taking of its property and requested that the trial court award damages for such taking from November 21, 1995, until the zoning is changed by the Memphis City Council. The City filed a response to the petition for contempt asserting that, on remand, it undertook a good faith effort to comply with the trial court's amended order and, therefore, was not in contempt of the trial court's order.

On April 7, 2004, the trial court entered an "Order Denying Plaintiff's Motion for Contempt and Order Remanding Case to Council for Further Consideration."  The court's order provided, in relevant part, as follows:

> That on remand of this case to the Council, the Council violated the Court's June 16, 2003[,] Order of remand in the various ways indicated below; but, the transcript of the proceedings before the Council on remand indicates that the Council, relying on advice of counsel, misinterpreted the meaning of the Order, and, for that reason, it is the opinion of the Court that the Defendants were not guilty of such willful contempt as would warrant the invocation against them of the severe monetary sanctions sought by Plaintiff.  Accordingly, it is the opinion of the Court that this matter should be sent back to the Council for reconsideration with instructions to the Council to take action consistent with the findings and conclusions contained in the June 16, 2003, Order of this Court, as that Order is interpreted in this Order.  This Order is based upon the following findings and conclusions of the Court:
>
> . . . .
>
> The case was appealed and following a two-day trial before this Court in March of 2003, this Court found that the evidence, (including approximately 100 admissions of the Defendants), was "overwhelming" that the denial of zoning was improper for a number of reasons set forth in detail in the Court's June 16, 2003, Order.
>
> . . . .
>
> Perhaps, the most important finding of the Court for purposes here was that <u>none</u> of the evidence offered by OPD and the objectors

-11-

at the '95 [sic] hearing before the Council justified a denial of the zoning requested.

The Court directed that on remand the Council "take action consistent with the findings and legal conclusions contained in the Order." This Order was entered on June 16, 2003.

As required by the Court of Appeals in Hoover, (Hoover v. Metropolitan Bd. of Zoning, 955 S.W.2d 52 (Tenn. App. 1997) (PAD 1997), this Court directed the Council that upon remand, it was to hear the case on the record at the hearing before the Council in 1995 AND on the record before this Court at the trial in March of 2003; and, the Council was expressly admonished not to hear "additional evidence" of any kind offered by anyone.

On remand to the Council, the evidence considered by the Council consisted of: a "summary" of the 1995 Council Hearing prepared by the Clerk of the Council under the supervision of the Council's attorney; an "updated" report of OPD; a "current" zoning map; "current" pictures of the area; the testimony of Mary Baker with OPD; and statements of counsel for the Council.

. . . .

The Plaintiff and its attorneys were denied an opportunity to be heard at the meetings of the Council and its Zoning Committee, at which the case was considered, based upon advice of Counsel that the Order of this Court prohibited the Council from permitting the Plaintiff or its attorneys to be heard, which is not so.

Based on these findings, the trial court concluded that the City violated the court's order by entertaining "new evidence," thus stepping outside the record as limited by the trial court on remand; failed to expedite the matter as ordered; failed to give Flautt & Mann a "new hearing" granted in the court's order; and denied the application on remand for reasons that the trial court had already concluded were insufficient reasons for denying the requested zoning. In turn, the trial court ordered as follows:

That because the Council violated the June 16, 2003, Order of this Court in the various ways described herein, the Council is hereby ordered to reconsider the Plaintiff's application at a hearing to be conducted pursuant to the Rules of Procedure of the Memphis City Council and the Court's June 16, 2003[,] order; and, at that hearing, the Council shall take action consistent with the findings and conclusions contained in this Court's Order of June 16, 2003, as interpreted in this Order.

-12-

On April 27, 2004, the City filed a notice of appeal to this Court presenting the following issue for our review:

I.      Whether the trial court, in a proceeding for contempt of the court's order in an action for common law certiorari, erred in remanding the matter back to the Memphis City Council for further action when the trial court found that the Appellant's conduct did not constitute contempt of the court's order.

On May 7, 2004, Flautt & Mann filed a motion to alter or amend the judgment with the trial court contesting the court's denial of damages for contempt. The trial court subsequently denied this motion on May 28, 2004.[6] Flautt & Mann did not file a notice of appeal in this case, but it has presented the following additional issues for our review:[7]

II.     Whether the trial court erred in denying the Appellee's claim for damages stemming from the Appellant's contempt; and
III.    Whether the trial court erred in denying the Appellee's claim for damages for the unconstitutional taking of its property without compensation.

For the reasons set forth more fully herein, we reverse the decision of the trial court regarding the petition for contempt.

---

[6] Pursuant to the Tennessee Rules of Appellate Procedure, a notice of appeal generally must be field within thirty (30) days after entry of the judgment appealed from. Tenn. R. App. P. 4(a) (2003). When a party files a post-trial motion pursuant to Rule 52.02 of the Tennessee Rules of Civil Procedure, "the time for appeal for all parties shall run from the entry of the order denying . . . such motion." Tenn. R. App. P. 4(b) (2003). "A prematurely filed notice of appeal shall be treated as filed after the entry of judgment from which the appeal is taken and on the day thereof." Tenn. R. App. 4(d) (2003). Accordingly, the notice of appeal filed by the Appellants has been timely filed.

[7] The Tennessee Rules of Appellate Procedure provide as follows:

> Except as otherwise provided in Rule 3(e), any question of law may be brought up for review and relief by any party. Cross-appeals, separate appeals, and separate applications for permission to appeal are not required. Dismissal of the original appeal shall not preclude issues raised by another party from being considered by an appellate court.

Tenn. R. App. P. 13(a) (2003). Accordingly, the issues raised by the Appellee are properly before the Court on appeal.

## II.
### LAW AND ANALYSIS

### *A.*
### *The Original Proceeding for Review*

Upon reviewing the record in this case, it is apparent to this Court that a myriad of issues not raised by the parties in the circuit court or on appeal must be addressed before we can properly dispose of the issues which have been presented for our review.[8] We begin with the initial petition filed by Flautt & Mann in the circuit court requesting a review of the Memphis City Council's denial of its application for re-zoning. Flautt & Mann filed a petition in the circuit court entitled "Petition for Certiorari or, in the Alternative, for Declaratory Judgment." In the first count in its petition, Flautt & Mann requested that, pursuant to the common law writ of certiorari, the circuit court review the actions of the Memphis City Council and enter an order finding such actions illegal, arbitrary, or capricious. In the second count in its petition, Flautt & Mann requested that the circuit court enter a declaratory judgment stating that the actions of the Memphis City Council amounted to an unconstitutional taking of the subject property. Flautt & Mann also requested "[t]hat a jury be empaneled to try the issues when joined."

Two forms of certiorari exist in Tennessee: the common law writ of certiorari, provided for in section 27-8-101 of the Tennessee Code, and the statutory writ of certiorari, provided for in section 27-8-102 of the Tennessee Code. *Fairhaven Corp. v. Tenn. Health Facilities Comm'n*, 566 S.W.2d 885, 886 (Tenn. Ct. App. 1976); *see also Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983). Unless the legislature has specifically provided for the use of other procedures, the procedural provisions found in Chapter 9, Title 27 govern review under both the common law and statutory writs. *Fairhaven Corp.*, 566 S.W.2d at 886. The circuit courts of this state have concurrent jurisdiction over a proceeding for a review conducted pursuant to either writ. Tenn. Code Ann. § 27-9-103 (2003).

The legislature has provided that a common law writ may issue under the following circumstances:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy. . . .

---

[8] We are mindful that "[r]eview generally will extend only to those issue presented for review." Tenn. R. App. P. 13(b) (2003). However, this Court, in its discretion, "may consider other issues in order . . . to prevent needless litigation . . . and . . . to prevent prejudice to the judicial process." Tenn. R. App. P. 13(b) (2003); *see also Allstate Ins. Co. v. Watson*, No. M2003–01574-COA-R3-CV, 2005 Tenn. App. LEXIS 126 (Tenn. Ct. App. Feb. 25, 2005).

Tenn. Code Ann. § 27-8-101 (2003). The common law writ of certiorari is an order from a superior court to an inferior tribunal or board to send up the record for review. *Utley v. Rose*, 55 S.W.3d 559, 563 (Tenn. Ct. App. 2001). It is an extraordinary remedy which lies within the sound discretion of the reviewing court to grant. *Rhea County v. White*, 43 S.W.2d 375, 378 (Tenn. 1931); *Utley*, 55 S.W.3d at 563; *Fite v. State*, 925 S.W.2d 543, 544 (Tenn. Ct. App. 1996). The common law writ of certiorari provides the proper procedural vehicle for reviewing the decisions of a municipal zoning board. *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990); *Fallin v. Knox County Bd. of Comm'rs*, 656 S.W.2d 338, 342 (Tenn. 1983); *Lafferty v. City of Winchester*, 46 S.W.3d 752, 758 (Tenn. Ct. App. 2000); *Hoover v. Metro. Bd. of Zoning Appeals for Davidson County*, 955 S.W.2d 52, 54 (Tenn. Ct. App. 1997).

Review under the common law writ of certiorari is generally limited to the record made before the lower tribunal or board. *421 Corp. v. Metro. Gov't of Nashville & Davidson County*, 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000). "It envisions that the court will review the record independently to determine whether it contains 'such relevant evidence that a reasonable mind might accept as adequate to support a rational conclusion.'" *Lafferty v. City of Winchester*, 46 S.W.3d 752, 759 (Tenn. Ct. App. 2000) (quoting *Hedgepath v. Norton*, 839 S.W.2d 416, 421 (Tenn. Ct. App. 1992)). A court reviewing the decision of a local zoning board is not permitted to re-weigh the evidence, *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980), inquire into the intrinsic correctness of the lower tribunal's decision, *Arnold v. Tenn. Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997), or substitute its judgment for that of the lower tribunal or board, *421 Corp.*, 36 S.W.3d at 474. On the issue of whether material evidence exists to support the decision of the lower tribunal or board, the reviewing court is prohibited from receiving new or additional evidence. *Weaver v. Knox County Bd. of Zoning Appeals*, 122 S.W.3d 781, 786 (Tenn. Ct. App. 2003); *Massey v. Shelby County Retirement Bd.*, 813 S.W.2d 462, 465 (Tenn. Ct. App. 1991). When reviewing the evidentiary basis for a local zoning board's decision, the question of whether the record contains material evidence to support the board's decision becomes a question of law. *Lafferty*, 46 S.W.3d at 759; *see also Pack v. Royal-Globe Ins. Companies*, 457 S.W.2d 19, 22 (Tenn. 1970); *Boyce v. Williams*, 389 S.W.2d 272, 276 (Tenn. 1965); *Weaver*, 122 S.W.3d at 784. The decision of a local zoning board will only be considered arbitrary when it is determined that the record contains no evidence to support the decision. *Lafferty*, 46 S.W.3d at 759 (citing *Sexton v. Anderson County*, 587 S.W.2d 663, 667 (Tenn. Ct. App. 1979)); *Watts*, 606 S.W.2d at 276–77. New or additional evidence may only be received by the reviewing court on the issue of whether the lower tribunal or board exceeded its jurisdiction or acted in an illegal, arbitrary, or capricious manner. *Massey*, 813 S.W.2d at 465; *see also Watts*, 606 S.W.2d at 277; *Weaver*, 122 S.W.3d at 786; *Domincovitch v. Wilson County Bd. of Zoning Appeals*, No. M1999-02334-COA-R3-CV, 2000 Tenn. App. LEXIS 735, at *22–23 (Tenn. Ct. App. Nov. 6, 2000); *Hemontolor v. Wilson County Bd. of Zoning Appeals*, 883 S.W.2d 613, 618 (Tenn. Ct. App. 1994).

In turn, section 29-14-101 *et seq.* of the Tennessee Code governs declaratory judgments. "Courts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tenn. Code Ann. § 29-14-102(a) (2003). "Any person . . . whose rights . . . are affected by a . . . municipal ordinance . . . may

. . . obtain a declaration of rights, status or other legal relations thereunder." Tenn. Code Ann. § 29-14-103 (2003). "When a proceeding [for declaratory judgment] involves the determination of an issue of fact, such issue *may be tried and determined* in the same manner as issues of fact are *tried and determined in other civil actions* in the court in which the proceeding is pending." Tenn. Code Ann. § 29-14-108 (2003) (emphasis added).

The original petition filed by Flautt & Mann in this case contained a request for the trial court to review the decision of the Memphis City Council under a common law writ of certiorari as well as a request that the trial court enter a declaratory judgment. While the City did file a motion seeking to have the declaratory judgment action dismissed, the basis for that motion was that Flautt & Mann had pursued the same or similar recovery against the City in the condemnation suit filed by the State. Even though the trial court moved the case to its non-jury calendar, it apparently entertained the declaratory judgment action along with undertaking a review of the case by common law writ of certiorari. The record contains no order addressing the City's motion. In fact, the original and amended orders of the trial court state that the court considered Flautt & Mann's petition "for common law certiorari, statutory certiorari, and/or declaratory judgment of the action of the Memphis City Council in denying Plaintiff's request for rezoning of property owned by it." In addition, the trial court, as a "further reason" for reversing the decision of the Memphis City Council, found that the Memphis City Council "deprived the Plaintiff of its reasonable investment-backed expectations for its property (i.e., use as a commercial site) and deprives the Plaintiff of the only economically viable use of its property, which is conceded to be use as a 'sign' site." This appears to be an attempt by the trial court to grant the relief requested by Flautt & Mann in its request for a declaratory judgment. Furthermore, we note that, at the hearing on the petition, Flautt & Mann presented the testimony of Judson R. Tepaske, a planning consultant for land development activities, and the trial court entertained ten exhibits introduced during the hearing.[9] Finally, the trial court's order reflects that the trial court made findings of fact in rendering its decision, signaling the handling of this case as an original action.

---

[9] The record originally filed with this Court did not contain a copy of the transcript of the original hearing conducted by the Memphis City Council on November 12, 1995. On February 15, 2005, after the Court heard oral argument in this case, Flautt & Mann filed a motion to supplement the record with a transcript of the original hearing before the Memphis City Council. The City filed a response stating it had no objection to the record being supplemented with the transcript. We, therefore, grant the Appellant's motion to supplement the record.

Ordinarily, this Court is bound by the same standard of review as the trial court when it reviews a lower tribunal's decision under a common law writ of certiorari. *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980) ("The scope of review by the appellate courts is no broader or more comprehensive than that of the trial court with respect to evidence presented before the Board."). Thus, the record before the lower tribunal is crucial to review by the circuit court as well as this Court. However, for the reasons set forth below, the record of the original hearing before the Memphis City Council is of little value in resolving the issues presently before the Court. We do note, however, that upon reviewing the transcript of the original hearing before the Memphis City Council on November 21, 1995, Mr. Tepaske did not testify at this hearing. Furthermore, upon reviewing the ten exhibits introduced at the circuit court level, which consisted of Mr. Tepaske's curriculum vitae and nine maps, we note that these exhibits are not included in the original record of the proceedings before the Memphis City Council.

Due to the treatment of this case by the trial court, it is necessary that we once again cite to a prior decision of this Court where we expressed our disapproval of joining an action for common law writ of certiorari with one for declaratory judgment:

> [W]e wish to heartily condemn that which appears to us to be a growing practice, i.e., the joinder of an appeal with an original action and the simultaneous consideration of both at the trial level. This Court is of the firm opinion that such procedure is inimical to a proper review in the lower certiorari Court and creates even greater difficulties in the Court of Appeals. The necessity of a separation of appellate review of a matter and trial of another matter ought to be self evident. In the lower Court one is reviewed under appropriate Appellate rules and the other is tried under trial rules. In this Court our scope of review is dependent upon the nature of a proceeding. In this case one matter would be limited by rules of certiorari review and the other would be reviewed under 13(d), Tennessee Rules of Appellate Procedure. Like water and oil, the two will not mix.
> . . . .
> A Declaratory Judgment suit is not one tried before any board or commission. It is tried in a real Court. That trial is subject to the Rules of Civil Procedure and rules of evidence. . . . Since the matters were considered together, how then are we to rule on objections made at the board hearing to the admissibility of evidence?. . . .
> These and other unusual questions are presented by the unnatural joinder of appellate and original jurisdiction in one proceeding. . . .
> We believe that the continued practice of joining appellate jurisdiction and original jurisdiction in one hearing will lead to procedural chaos bogged down in a quagmire of legal conflicts with reasoned law sinking in the quicksand of confusion.

*Goodwin v. Metro. Bd. of Health*, 656 S.W.2d 383, 386–87 (Tenn. Ct. App. 1983); *see also Winkler v. Tipton County Bd. Of Educ.*, 63 S.W.3d 376, 383 (Tenn. Ct. App. 2001); *Holzinger v. Indus. Dev. Bd.*, No. 01A01-9711-CV-00685, 1999 Tenn. App. LEXIS 8, at *12 (Tenn. Ct. App. Jan. 11, 1999); *Music City Telecom, Inc. v. American-Music Telegroup*, No. 01A01-9403-CH-00127, 1994 Tenn. App. LEXIS 625, at *6–8 (Tenn. Ct. App. Oct. 26, 1994); *Byram v. City of Brentwood*, 833 S.W.2d 500, 502 (Tenn. Ct. App. 1991).

In any event, we need not address the propriety of the trial court's handling of the original petition filed by Flautt & Mann. Tennessee Rule of Appellate Procedure 3(a) provides that "[i]n civil actions every final judgment entered by a trial court from which an appeal lies to the . . . Court of Appeals is appealable as of right." Tenn. R. App. P. 3(a) (2003). Such appeals are initiated by filing a notice of appeal with the clerk of the trial court. Tenn. R. App. P. 3(e) (2003). The notice

of appeal "shall be filed with and received by the clerk of the trial court *within 30 days* after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a) (2003) (emphasis added). The thirty-day time limit is mandatory and jurisdictional in civil cases. *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004); *Binkley v. Medling*, 117 S.W.3d 252, 255 (Tenn. 2003). The Tennessee Rules of Appellate Procedure expressly provide that this Court can neither waive, Tenn. R. App. P. 2 (2003), nor extend, Tenn. R. App. P. 21(b) (2003), the time for filing the notice of appeal. *See Jefferson v. Pneumo Services Corp.*, 699 S.W.2d 181, 184 (Tenn. Ct. App. 1985). The failure of a party to timely file a notice of appeal will deprive this Court of jurisdiction to hear the matter. *Searle v. Pfister*, No. M2000-00731-COA-R3-CV, 2000 Tenn. App. LEXIS 817, at *7–8 (Tenn. Ct. App. Dec. 21, 2000) (citing *Jefferson*, 699 S.W.2d at 184).

Neither party filed a notice of appeal to this Court seeking to contest the trial court's amended order. Accordingly, this Court cannot examine the correctness of the trial court's order on the original petition filed by Flautt & Mann in this case. In its second issue raised on appeal, Flautt & Mann asserts that, in the amended order, the trial court found that the actions of the Memphis City Council amounted to an unconstitutional taking of its property without compensation,[10] but the trial court erred by not awarding damages. Flautt & Mann states that it did not file an appeal regarding the trial court's ruling on the original petition because it "fully expected to get the zoning requested on remand." (Appellee's Br. at 102). The "expectations" of a party cannot change the result compelled by the Tennessee Rules of Appellate Procedure. Since Flautt & Mann did not file a timely notice of appeal, this Court is without jurisdiction to entertain this issue. *See Hemontolor v. Wilson County Bd. of Zoning Appeals*, 883 S.W.2d 613, 618 (Tenn. Ct. App. 1994).

### B.
### *The Petition for Contempt*

On June 16, 2003, the trial court amended its original order to comply with this Court's holding in *Hoover, Inc. v. Metropolitan Board of Zoning Appeals for Davidson County*, 955 S.W.2d 52 (Tenn. Ct. App. 1997), wherein we stated:

> The common-law writ of certiorari is a supervisory writ, that provides the courts with limited options for dealing with error discovered in the proceedings being reviewed. Because courts should avoid requiring local zoning authorities to take a particular action except in the most extraordinary circumstances, the most common judicial remedy in zoning cases is to remand the case to the zoning agency with instructions appropriate to the circumstances of the case. Rather than shouldering the local agency's responsibilities, the courts should insist that the agency carry out its task in an appropriate manner. The goal of a remand should be to place the parties and the

---

[10] It is not entirely clear from reading the trial court's order that the court found that an unconstitutional taking occurred in this case. Nevertheless, our need to address this issue is pretermitted.

agency in the position they would have been in had the agency not acted improperly.

*Hoover*, 955 S.W.2d at 55 (citations omitted). We went further in *Hoover* to state that "the most appropriate remedy is to remand the case to the Board with directions to conduct a new hearing based on the existing record without introduction of additional factual evidence." *Id.* "Reopening the record at this late stage would only give the parties a second bite at the apple." *Id.*

Thus, in an effort to comply with our decision in *Hoover*, the trial court removed the mandatory language from its original order and entered an amended order requiring the Memphis City Council to do the following: (1) conduct a new hearing on Flautt & Mann's application based solely upon the record from the initial hearing before the council in 1995 and the additional evidence presented before the circuit court;[11] (2) at the hearing, do not consider any additional evidence of any kind offered by anyone; (3) following the hearing, take action consistent with the court's findings and conclusions contained in the order; and (4) expedite the matter to the maximum extent possible.

Following a hearing on Flautt & Mann's motion for contempt, the trial court entered an order on April 7, 2004, denying the petition.[12] The trial court found that the Memphis City Council violated the June 16, 2003, order by: (1) not taking action consistent with her findings and legal conclusions, specifically finding that the application was out of character with the neighborhood and would constitute spot zoning when the court found that none of the reasons proffered by OPD and the objectors for denying the application could justify a denial of zoning; (2) failing to limit the evidence to the record of the hearing before the Memphis City Council in 1995 and, instead, entertaining a "summary" of that hearing; (3) entertaining new evidence in the form of an "updated" report, a "current" zoning map, "current" photos of the area in question, the testimony of Ms. Baker, and statements by Mr. Wade; (4) failing to expedite the matter to the maximum extent possible on remand; and (5) failing to provide Flautt & Mann with a new hearing by denying its counsel the right to be heard concerning the record before the Memphis City Council on remand. However, the trial court declined to find the Memphis City Council in contempt of the court's previous order because the Council's actions were "based upon erroneous advice of counsel as to the meaning of the Order." Despite a finding of no contempt, the trial court decided to remand the case once more to the Memphis City Council for reconsideration.

"Civil contempt occurs when a person does not comply with a court order and an action is brought by a private party to enforce rights under the order that has been violated." *Doe v. Bd. of*

---

[11] Based on our previous discussion regarding the trial court's handling of the original petition, we also question the ability of the trial court to entertain new evidence not presented at the original hearing and then order the lower tribunal to consider that additional evidence on remand.

[12] Counsel for Flautt & Mann argues that it is not entirely clear from reading the trial court's order whether the court made a finding of no contempt. The trial court's order is entitled "Order *Denying* Plaintiff's Motion for Contempt and Order Remanding Case to Council for Further Consideration." (emphasis added). Accordingly, we find that the trial court determined that the Memphis City Council was not in contempt of the court's order.

-19-

*Prof'l Responsibility*, 104 S.W.3d 465, 473 (Tenn. 2003). Every court in this state has the power to compel obedience to its judgments or orders. Tenn. Code Ann. § 16-1-102(3) (2003). "For the effectual exercise of its powers, every court is vested with the power to punish for contempt, as provided for in this code." Tenn. Code Ann. § 16-1-103 (2003). Thus, the legislature has provided as follows:

> **Scope of power. —**
>
> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
> (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;
> (2) The willful misbehavior of any of the officers of such courts, in their official transactions;
> (3) *The willful disobedience or resistance of any officer of such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts*;
> (4) Abuse of, or unlawful interference with, the process or proceedings of the court;
> (5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them; or
> (6) Any other act or omission declared a contempt by law.

Tenn. Code Ann. § 29-9-102 (2003) (emphasis added); *see also Black v. Blount*, 938 S.W.2d 394, 397 (Tenn. 1996) (noting that the legislature codified the inherent common-law power of courts to punish for contempt, specifically providing those instances when a finding of contempt is appropriate, in order to thwart the potential for abuse by the courts of this state). Our supreme court has cautioned the courts of this state, stating:

> While the power to punish for contempt may and should be used in an appropriate case, it should not be used unless the case clearly calls for its exercise. The power should be exercised only when necessary to prevent actual, direct obstruction of, or interference with, the administration of justice.

*Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908, 911–12 (Tenn. 1964); *see also Loy v. Loy*, 222 S.W.2d 873, 877 (Tenn. Ct. App. 1949).

"The court of appeals also has appellate jurisdiction over civil or criminal contempt arising out of a civil matter." Tenn. Code Ann. § 16-4-108(b) (2003); *Freeman v. Freeman*, 147 S.W.3d 234, 242–43 (Tenn. Ct. App. 2003). This Court has previously noted that, in order to find a party

in contempt of the court's order, the lower court must make a threshold finding of willfulness. *Haynes v. Haynes*, 904 S.W.2d 118, 120 (Tenn. Ct. App. 1995); *see also Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000). The determination of whether a party has willfully violated an order of the court is uniquely within the sound discretion of the court which issued the order. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 474 (Tenn. 2003); *Stingray Computer Services, Inc. v. McFarlane*, No. 01-A-01-9207-CH-00284, 1993 Tenn. App. LEXIS 319, at *10 (Tenn. Ct. App. Apr. 28, 1993) (citing *Robinson*, 377 S.W.2d at 912). On appeal, we review a lower court's decision regarding the existence of contempt in a particular case for an abuse of discretion. *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993) (citing *Robinson*, 377 S.W.2d at 912); *Freeman*, 147 S.W.3d at 242 (citations omitted). In conducting a review of this nature, we are mindful of the following:

> Discretionary decisions require conscientious judgment. *See BIF v. Service Constr. Co.*, 1988 Tenn. App. LEXIS 430, 1988 WL 72409, at *2. They must take the applicable law into account and must also be consistent with the facts before the court. *See Overstreet v. Shoney's, Inc.*, 4 S.W.3d at 694. Appellate courts will set aside a discretionary decision only when the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence. *See Overstreet v. Shoney's, Inc.*, 4 S.W.3d at 695. Thus, a trial court's discretionary decision should be reviewed to determine: (1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives. *See BIF v. Service Cosntr. Co.*, 1988 Tenn. App. LEXIS 430, 1988 WL 72409, at *3. Appellate courts should permit a discretionary decision to stand if reasonable judicial minds can differ concerning its soundness. *See Overstreet v. Shoney's, Inc.*, 4 S.W.3d at 695.

*White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999); *see also State v. Looper*, 86 S.W.3d 189, 193–94 (Tenn. Ct. App. 2000); *State v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

The Tennessee Supreme Court has expressly stated that "the advice of counsel is no excuse for failure to obey an order of the court, but may be considered in mitigation of the offense if deemed in good faith." *Robinson v. Air Draulics Eng'g Co., Inc.*, 377 S.W.2d 908, 911 (Tenn. 1964); *see also Nelms v. Weaver*, No. 2, 1986 Tenn. App. LEXIS 3352, at *5 (Tenn. Ct. App. Oct. 8, 1986); *Garrett v. Forest Lawn Mem'l Gardens, Inc.*, 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979). The trial court failed to identify and apply the correct legal principle to Flautt & Mann's petition for contempt. *White*, 21 S.W.3d at 223. Accordingly, the trial court abused its discretion in finding that the actions

of the Memphis City Council did not constitute contempt due to the erroneous advice of its lawyer.

It is necessary that we remand this case to the trial court for a determination, consistent with this opinion,[13] of whether the actions of the Memphis City Council constituted contempt of the trial court's order. While the trial court may have disagreed with the decision of the Memphis City Council on remand, we note, as should the trial court, that the petition presently before the trial court is one for civil contempt.[14] "Punishment for civil contempt is designed to coerce compliance with the court's order and is imposed at the insistence and for the benefit of the private party who has suffered a violation of rights." *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 473 (Tenn. 2003) (citations omitted). Should the trial court determine that the actions of the Memphis City Council constitute willful contempt of the court's order, the trial court is instructed to fashion an appropriate sanction authorized by law.[15] *See* Tenn. Code Ann. §§ 29-9-103 to -105 (2003).

## C.
### *Frivolous Appeal*

While not raised as a separate issue on appeal, Flautt & Mann requests that this Court award it damages pursuant to section 27-1-122 of the Tennessee Code, which provides:

> **Damages for frivolous appeal. —**
>
> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122 (2003). Flautt & Mann argues that the City's basis for appealing the trial court's order regarding the contempt petition is without merit. Since we have determined that the trial court's order regarding the contempt petition was erroneous as a matter of law, this is not a frivolous appeal. Accordingly, we deny the Appellee's request for damages under the statute.

---

[13] *See Earls v. Earls*, No. M1999-00035-COA-R3-CV, 2001 Tenn. App. LEXIS 353, at *7–11 (Tenn. Ct. App. May 14, 2001) (discussing the scope of a trial court's authority on remand from an appellate court).

[14] When the trial court determined that the acts of the Memphis City Council did not constitute willful contempt of the court's order, there was nothing left to decide regarding the petition for contempt presently before the court. Thus, the trial court also exceeded its authority in remanding the case to the Memphis City Council for further consideration.

[15] Since it is necessary for this Court to remand this case to the circuit court, we need not address Flautt & Mann's issue regarding the trial court's failure to award damages for contempt. This issue can be appropriately addressed by the trial court on remand.

## III.
### Conclusion

For the reasons set forth herein, we reverse the trial court's ruling regarding the Appellee's petition for contempt and remand this case to the trial court with instructions to conduct further proceedings consistent with this opinion. Costs of this appeal are taxed to the Appellee, Flautt & Mann, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE